UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **DEANDRE L. NELSON**, | 2:22-cv-12168-TGB-KGA |
| Plaintiff, | HON. TERRENCE G. BERG |
| v. | |
| **CORRECTIONAL OFFICER (FNU) LEWIS,**[1] **et al.,** | **OPINION AND ORDER OF SUMMARY DISMISSAL** |
| Defendants. | |

## I. INTRODUCTION

This is a *pro se* civil rights case brought pursuant to 42 U.S.C. § 1983. Michigan prisoner DeAndre Nelson, now confined at the Gus Harrison Correctional Facility, alleges facility staff at the Central Michigan Correctional Facility in St. Louis, Michigan, violated his First, Eighth, and Fourteenth Amendment rights by assaulting him, writing a false misconduct ticket against him, and failing to investigate properly the ticket and his related grievance. ECF No. 1, PageID.5, 7-8. Nelson sues Correctional Officer Lewis, Reviewing Officer M. Desco, and Administrative Law Judge (ALJ) Pezon in their official and individual capacities, and Michigan Department of Corrections Director Heidi

---

[1] While the first two pages of the complaint spell Defendant Correctional Officer Lewis' name as "Louis," all other mentions of the defendant are as "Lewis." *See, e.g.,* ECF No. 1, PageID.5, 7, 8, 40-41.

Washington in her official capacity. *Id*. at PageID.2-3. Plaintiff seeks injunctive relief and monetary damages. *Id*. at PageID.8. The Court granted Plaintiff leave to proceed without prepayment of the filing fee for this action. ECF No. 3.

Having reviewed the matter, and for the reasons stated herein, the Court concludes the civil rights complaint must be dismissed.

## II. THE COMPLAINT

Plaintiff Nelson states that Defendant Officer Lewis assaulted him from behind on July 15, 2020, while Nelson was walking with two other correctional officers. Compl., ECF No. 1, PageID.5, 7. Officer Lewis allegedly bent Nelson's arm, which caused him pain. *Id*. at PageID.41. Nelson also says that he experienced a mental injury of "long duration." *Id*. at PageID.40-41.

On the same day, Lewis issued a misconduct ticket to Nelson for assault and battery on a staff member, which Nelson says was predicated on a false allegation made by Lewis. *Id*. at PageID.20-21. Nelson also says that the ticket failed to list witnesses who were present during the incident, in violation of the MDOC "Hearings Handbook." *Id*. at 21, 23, 49.

Nelson filed a grievance over Lewis's actions. Defendant Desco investigated that grievance. Nelson complains that Desco did not provide or mention the assistance illiterate prisoners are supposed to receive in complex grievance cases. *Id*. at PageID.5, 7. Nelson asserts that Desco's

2

response to the grievance, which clarified instructions to staff on how to place prisoners in restraints, shows that Desco recognized that Nelson's complaint of "Unnecessary roughness" was legitimate. *Id.* at PageID.30, 32. Nelson also argues Desco's investigation of the grievance was not thorough. *Id.* at PageID.22.

Nelson's claims against ALJ Pezon, the hearing officer who presided over his misconduct ticket, are similar. Nelson argues that Pezon failed to perform a thorough investigation. *Id.* at PageID.45. Nelson says that Pezon neither questioned witnesses present at the incident nor did he admit into evidence Nelson's grievance, which Nelson says would have corroborated his account. *Id.* at PageID.7, 24. Nelson alleges Pezon's actions violated MDOC policy directives and state law. *Id.* at PageID.50-51.

Nelson asserts several general categories of injuries, including "civil injuries, personal injuries, and temporary injuries." *Id.* at PageID.8. He complains of a temporary physical injury—the pain caused by Lewis bending his arm—as well as "continual injury" to his mental health. *Id.* at PageID.40-41. Nelson seeks monetary damages in the amount of $3 million and injunctive relief. *Id.* at PageID.8, 51-52. Specifically, Nelson requests an injunction that would require reviewing officers to provide guidance on "case issue procedure[s]" to prisoners "without a formal education," that the guidance be recorded, and that those prisoners be

3

given a three-day window to discuss the best options with a "trusted person." *Id.* at PageID.8, 51.

### III. DISCUSSION

**A. Legal Standard**

Under the Prison Litigation Reform Act of 1996 ("PLRA"), a court is required to dismiss sua sponte an *in forma pauperis* complaint before service on a defendant if it determines that the action is frivolous or malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 42 U.S.C. § 1997e(c); 28 U.S.C. § 1915(e)(2)(B). A court is similarly required to dismiss complaints meeting any of the same criteria which seek redress against government entities, officers, or employees. *See* 28 U.S.C. § 1915A. A complaint is frivolous if it lacks an arguable basis in law or in fact. *Denton v. Hernandez*, 504 U.S. 25, 31 (1992); *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

The dismissal standard under the PLRA is equivalent to that of Federal Rule of Civil Procedure 12(b)(6). *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)). When evaluating a complaint under that standard, courts "construe the complaint in the light most favorable to the plaintiff, accept all well-pleaded factual allegations as true, and examine whether the complaint contains 'sufficient factual matter, accepted as true, to state a claim to relief that

4

is plausible on its face.'" *Hill v. Snyder*, 878 F.3d 193, 203 (6th Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678).

A civil rights complaint filed by a self-represented litigant must also be construed liberally. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). Nonetheless, Federal Rule of Civil Procedure 8(a) requires that a complaint set forth "a short and plain statement of the claim showing that the pleader is entitled to relief," as well as "a demand for the relief sought." Fed. R. Civ. P. 8(a)(2), (3). The purpose of this rule is to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (citation omitted). While this notice pleading standard does not require "detailed" factual allegations, it does require more than the bare assertion of legal principles or conclusions. *Id*. Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id*. (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id*. (quoting *Twombly*, 550 U.S. at 557).

To state a civil rights claim under 42 U.S.C. 1983, "a plaintiff must set forth facts that, when construed favorably, establish (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law." *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009)

5

(citation omitted). A plaintiff must allege "more than just mere negligence." *Fisher v. City of Memphis*, 234 F.3d 312, 317 (6th Cir. 2000) (citing *Collins v. City of Harker Heights*, 503 U.S. 115 (1992)). In addition, the plaintiff must allege that "the defendants were personally involved in the alleged deprivation of federal rights." *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (citing *Hall v. United States*, 704 F.2d 246, 251 (6th Cir.1983)).

## B. Application

### 1. Defendant MDOC Dir. Heidi Washington

Even under the liberal review afforded to the pleadings of self-represented litigants, Nelson's complaint is subject to summary dismissal. First, Nelson's claims against Director Washington must be dismissed. Nelson sues Washington in her official capacity. But the Eleventh Amendment bars civil rights actions against state officials sued in their official capacities unless the state has waived its immunity and consented to suit, or Congress has abrogated that immunity. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66 (1989). "The state of Michigan . . . has not consented to being sued in civil rights actions in the federal courts." *Johnson v. Unknown Dellatifa*, 357 F.3d 539, 545 (6th Cir. 2004) (citing *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986)). Nor did Congress abrogate state sovereign immunity when it enacted 42 U.S.C. § 1983. *Chaz Const., LLC v. Codell*, 137 F. App'x 735, 743 (6th Cir. 2005). Washington is thus immune from suit against her in her official

6

capacity.

### 2. Defendant ALJ Pezon

Next, Defendant administrative law judge Pezon will be dismissed. Nelson complains Pezon failed to perform a thorough investigation of the misconduct ticket against him, in violation of MDOC policies and state law, because he failed to question witnesses who were present at the incident and failed to refer to Nelson's grievance, which would have corroborated his account. ECF No. 1, PageID.7, 21, 24, 45. But the Sixth Circuit has long recognized that Michigan hearings officers with adjudicatory authority, when acting as administrative law judges, enjoy absolute judicial immunity from damages arising out of actions within the officer's authority. *Goldsmith v. Sharrett*, 614 F. App'x 824, 827 (6th Cir. 2015) (quoting *Shelly v. Johnson*, 849 F.2d 228 (6th Cir. 1988) (per curiam) ("Michigan prison hearing officers are entitled to 'absolute immunity from liability with respect to their judicial acts.'"); *see also Proctor v. Applegate*, 661 F. Supp. 2d 743, 764 (E.D. Mich. 2009). Pezon is thus immune from suit and will be dismissed.

### 3. Defendant Hearing Officer Desco

Nelson's claims against Defendant Hearing Officer Desco also fail to state a claim upon which relief may be granted. Nelson alleges that Desco interviewed him over the grievance he filed against Defendant Lewis. ECF No. 1, PageID.7. He complains Desco did not perform a thorough investigation and that he failed to inform Nelson of assistance

7

that might be available to assist illiterate prisoners in complex cases. *Id.* at PageID.7, 20, 47. However, the "'denial of administrative grievances or the failure to act' by prison officials does not subject supervisors to liability under § 1983." *Grinter v. Knight,* 532 F.3d 567, 576 (6th Cir. 2008) (quoting *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)); *accord*, *Mann v. Mohr*, 802 F. App'x 871, 876 (6th Cir. 2020) (citations omitted). Nelson's claims against Desco will be dismissed.

### 4. Defendant Corrections Officer Lewis

Nelson's allegations against the final defendant, Lewis, fail to state a claim of constitutionally excessive force or a due process violation. In the first claim, Nelson asserts Lewis assaulted him from behind, bending his arm and causing him pain and lasting mental and emotional injury.

Prisoners are protected from "cruel and unusual punishments" by the Eighth Amendment, "[b]ut not every shove or restraint gives rise to a constitutional violation." *Cordell v. McKinney*, 759 F.3d 573, 580 (6th Cir. 2014) "On occasion, '[t]he maintenance of prison security and discipline may require that inmates be subjected to physical contact actionable as assault under common law.'" *Id.* (citation omitted).

At the same time, "the use of excessive physical force against a prisoner may constitute cruel and unusual punishment [even] when the inmate does not suffer serious injury." *Wilkins v. Gaddy*, 559 U.S. 34, 34 (2010) (per curiam) (citing *Hudson v. McMillian*, 503 U.S. 1, 4 (1992)). The "core judicial inquiry" for an excessive force claim in the prison

8

setting is "not whether a certain quantum of injury was sustained, but rather 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Id.* at 37 (citing *Hudson*, 503 U.S. at 7). The severity of the prisoner's injury remains relevant in this inquiry because it "is one factor that may suggest whether the use of force could plausibly have been thought necessary in a particular situation." *Id.* (citation and internal quotation marks omitted).

"Because prison officials 'must make their decisions in haste, under pressure, and frequently without the luxury of a second chance,'" courts must afford them "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Combs v. Wilkinson*, 315 F.3d 548, 556-57 (6th Cir. 2002) (quoting *Hudson*, 503 U.S. at 6).

The Court must take Nelson's allegations as true and construe them liberally and in a light most favorable to him. *Hill*, 878 F.3d at 203. It is not clear why Defendant Lewis determined that Nelson had to be placed in some kind of restraint, but Nelson does not dispute that is what Lewis was doing at the time of the alleged assault. *See* ECF No. 1, PageID.33, 39. Nelson alleges the restraint was unnecessary, because the two correctional officers escorting him had not handcuffed him and there was "no need for a struggle." *Id.* at 34. Even if that is so, Nelson's

9

description of the resulting physical injury, the painful but temporary bending of Nelson's arm, does not lead to the conclusion this was a malicious and sadistic act. In addition, Lewis's determination that restraint was appropriate is subject to significant deference. *Hudson*, 503 U.S. at 6; *Combs*, 315 F.3d at 556-57. In that context, his motivation for bending Nelson's arm seems more of an attempt to maintain order than a wanton or willful infliction of pain.

While a significant injury is not necessary to establish an Eighth Amendment violation, the resulting degree of harm is a factor in the analysis. The "attack" appears to have been brief and no resulting physical injury occurred, again suggesting Lewis used no more force than necessary. *See Wilkins*, 599 U.S. at 37. Nelson also complains of a "continual" mental injury and depression. ECF No. 1, PageID.41. However, monetary damages are not available where Nelson's only injury is mental or emotional. *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008) (citing 42 U.S.C. § 1997e(e)).

Nelson alleges the misconduct ticket Lewis wrote against him was premised on false allegations, but this claim also fails to state a claim upon which relief may be granted. A prisoner's ability to challenge a prison misconduct conviction depends on whether the convictions implicated any liberty interest. A prisoner does not have a protected liberty interest in prison disciplinary proceedings unless the sanction "will inevitably affect the duration of his sentence" or the resulting

10

restraint imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *See Sandin v. Conner*, 515 U.S. 472, 484, 487 (1995).

Nelson notes only that he "served disciplinary punishment from Officer Lewis' misconduct report . . ." ECF No. 1, PageID.40. He does not indicate whether this punishment was a loss of privileges, time in segregation, or some other disciplinary measure. His brief allegation on this issue thus does not permit the Court to conclude that he suffered "atypical or significant hardship" or that the duration of his sentence would be "inevitably" affected. *Sandin*, 515 U.S. at 486-87. Nelson has thus not established a liberty interest that Lewis violated by issuing the misconduct ticket.

### 5. Allegations of state law violations

Next, Nelson's claims of violations of state law and MDOC policies and procedures in the writing of his misconduct ticket and the investigations into that ticket and the grievance must also be dismissed as they are not redressable under section 1983. These actions did not implicate Nelson's federal or constitutional rights, as required by the statute. *See Michael v. Ghee*, 498 F.3d 372, 374 (6th Cir. 2007) (affirming district court claim dismissals "because 42 U.S.C. § 1983 does not provide relief for a violation of state law"); *see also Huron Valley Hosp., Inc. v. City of Pontiac*, 887 F.2d 710, 714 (6th Cir.1989) (holding section 1983 "does not cover official conduct that allegedly violates state law").

11

### 6. Injunctive relief to aid uneducated or illiterate prisoners

Finally, Nelson argues that the way Defendants Desco and Pezon managed their respective investigations was unfair and took advantage of his naivete and illiteracy. ECF No. 1, PageID.47-48. As a result, he requests injunctive relief mandating new procedures to aid "uneducated" and "illiterate" prisoners. *Id.* at PageID.8, 51. This request is beyond this Court's authority.

Existing case law supporting the availability of assistance for uneducated prisoners is premised on their right to access the court for constitutional claims related to their incarceration. *Thaddeus-X v. Blatter*, 175 F.3d 378, 396 & n.11 (6th Cir. 1999). Nelson's proposal is directed instead toward internal procedures, requesting that prisoners "without a formal education" receive both verbal and written notice of all "case issue procedure" options as well as three days to review those options "with a trusted person." ECF No. 1, PageID.8.

Under the doctrine of standing, the federal courts may not intervene in the operations of a prison simply on the basis "that [it is] not organized or managed properly." *Lewis v. Casey*, 518 U.S. 343, 350 (1996). Rather, the courts may only act on actual or imminent constitutional injury. *Id.* at 349. The remedy Nelson seeks, improving operating procedures for the benefit of uneducated prisoners, is a laudable goal for the MDOC to strive towards. However, this improvement in corrections procedures is the responsibility of the "political branches of the State and

12

Federal Governments[,]" not the federal courts. *Lewis*, 518 U.S. at 349.

## IV. Conclusion and Order

For all the reasons stated above, the complaint will be **DISMISSED WITH PREJUDICE**. 42 U.S.C. § 1997e(c); 28 U.S.C. § 1915(e)(2)(B).

**IT IS SO ORDERED.**

Dated: January 3, 2023  s/Terrence G. Berg
TERRENCE G. BERG
UNITED STATES DISTRICT JUDGE